# Bechtel's Election Expenses.

*Election law—Election expenses—Audit of candidates—Findings of fact—Amendment—Constitutional law—Costs—Evidence.*

1. The findings of fact of a judge sitting as an auditor of the account of a candidate's election expenses will be given the same force and effect by the appellate court that would be given to similar findings by an auditing judge in the orphans' court or a common pleas judge sitting in equity.   In the absence of any manifest error on the part of the court below, the appellate court must accept the facts as found.

2. At the audit of a candidate's expense account, evidence that a person to whom the candidate intrusted money to be spent in a legal way, spent such money in an illegal way, is inadmissible where there is no offer to show that the illegal expenditure was made with the knowledge and consent of the candidate.

3. Where a witness for the petitioners for an audit of a candidate's account, has testified in his examination in chief that he had had no conversation with the candidate, and had received no money from him, the witness cannot on cross-examination be questioned as to statements of a contrary character made by him to other parties when the candidate was not present.

4. At the audit of a candidate's election account the auditing judge may in his discretion permit an amendment so as to enable the candidate to file receipts omitted from the account, and to place on the record the names of certain canvassers omitted from the account.

5. Under the Act of March 5, 1906, P. L. 78, known as "The Corrupt Practices Act," a candidate may intrust money to another person and authorize him to act as his agent or representative in the expenditure of money for proper purposes in the election campaign.

6. Where a candidate shows in his account an item of considerable amount intrusted to another to be expended for lawful campaign purposes, but fails to set out in the account the purposes for which the money was spent, and the evidence taken at the audit shows that the money was spent in a lawful manner, the court in sustaining the account should impose the costs upon the accountant, and not upon the petitioner, inasmuch as the audit was made necessary by the failure of the candidate to show in his account that the moneys intrusted to his agent were spent in a lawful manner.

7. The act of March 5, 1906, known as "The Corrupt Practices Act" is constitutional.

Argued Dec. 9, 1908.   Appeal, No. 170, Oct. T., 1908, by Andrew Robertson et al., from order of Q. S. Schuylkill Co.,

dismissing petition for audit of account of Harry O. Bechtel, candidate for Judge of Schuylkill County.   Before Rice, P. J., Porter, Henderson, Morrison, Orlady, Head, and Beaver, JJ.   Affirmed, except as to costs.

Audit of account of Harry L. Bechtel, candidate for judge. Before Marr, P. J., and Shay, J.

At the audit the judges permitted the accountant to file receipts omitted from the account which should have accompanied it.   (8) They also permitted the accountant to file the names of certain canvassers which had been inadvertently omitted from the account, although the sums paid to them had been set forth therein.                                              '

The petitioners made requests as follows:

" (a) That the payment of $700 to J. H. Nichter as set out in the account was illegal.

" (b) That the payment of $200 to H. T. Bechtel as set out in the account was an illegal payment."

To these requests, we answer as follows, that the account on second line reads as follows, under one column headed "date paid," second column, "to whom paid or promised," third column bearing the word "amount."

"October, 30th, 1907.   J. H. Nichter, as per receipt, $700."

Accompanying the account is the following receipt:

"Pottsville, Pa., October 30, 1907.

"Received of H. O. Bechtel the sum of seven hundred dollars in sums as follows: First, two hundred dollars.   Second, two hundred dollars, and the third time, three hundred dollars, this money to be expended strictly in accordance with the Act of Assembly approved the 5th day of March, 1906, and especially the 4th section of said Act, for the purpose of canvassing the 'dissemination of information to the public' by employing canvassers to canvass the different election districts to explain and answer any charges, assertions or statements affecting or intended to affect me as a candidate for Judge, and to canvass among the electors or voters for the purpose of bringing or causing them to come to the polls, and to pay part

of the expenses of the meetings held in my interest.   And it is expressly understood and agreed that no one person shall be paid a sum exceeding in amount the sum of ten dollars.

"J. H. NICHTER."

The account refers to this receipt as explanatory of the uses to be made of the money given to the party mentioned in the account.   The evidence of J. H. Nichter, who was called by the petitioners, further explains the use to which the money was appropriated, showing that at different times a part of it was paid to Charles J. Carroll for salary and traveling expenses, canvassing in the interest of H. O. Bechtel; a part to S. Hogan; a part to P. P. Pulaski; and to other parties, who were employed as canvassers, and receipts signed by the different parties, giving dates, the amount paid at the different times and the purposes for which the money was used are given in evidence.

The same state of facts exists as to the disbursement of $200 to H. T. Bechtel, which is the first credit set forth in the account, which gives the date, the name, the amount and says as per receipt, which receipt accompanies the account and sets forth the purposes for which the money was to be used.   This receipt is further explained by H. T. Bechtel, a witness called by the petitioners.   The purposes for which this money was disbursed, as set forth either in the receipts or in the evidence, cannot be claimed to be illegal; and the manner of setting forth these credits by giving the date, to whom paid, the amount paid, and the purpose as set forth in the receipts, does not stamp the payments as illegal; and we therefore decline to affirm these requests. [2, 3]

J. H. Nichter, was asked this question:

"Q. Did you furnish any liquor during the campaign, in the interests of H. O. Bechtel? "

Mr. Reilly: Objected to.

Mr. Schalck: We want an offer.

Mr. Farquhar: We want to offer to show by this witness that he furnished liquors for the election, for the benefit of H. O. Bechtel.

Mr. Schalck: For what purpose?

Mr. Farquhar: For the purpose of showing the incorrectness of this account as furnished by him.

Mr. Schalck: It is objected to, that the proposed inquiry is incompetent, irrelevant and immaterial. The court is here to audit the account of the accountant here. It is on petition of these gentlemen that the accountant has been ordered for audit, and the court is simply to audit this account. There is nothing in the account of this accountant that has reference to these matters, and what Mr. Nichter did or did not do in that direction, if he did anything, is wholly immaterial, irrelevant and incompetent, for it is not alleged, and cannot be proven, that what he did was by the direction or order of the accountant, or with his knowledge or consent. An accountant or candidate is not to be affected by what his friends may do, or others may do, without his knowledge or consent; he only is responsible for that which he himself does or directs or orders to be done.

Judge MARR: There is nothing in the offer, as I understand it, that proposes to connect the accountant with this dispensing of liquor, is there?

Mr Farquhar: No. We have shown by the witness that this money was furnished to him in advance of his giving a receipt for it; all of it was furnished him in advance of the giving of the receipt. The act of the legislature requires that for every disbursement they shall give the date, name of the party to whom it is given, and the purpose for which it is given. He has received, he admits, $700 from H. O. Bechtel, and has undertaken to show how he disposed of it. We may show by this witness that, having been the agent of H. O. Bechtel, his receipts are not true; that in addition to these matters he dispensed liquor of various kinds, a valuable consideration, for and on behalf of H. O. Bechtel.

Judge MARR: By his direction?

Mr. Farquhar: We cannot show directly by his direction, but we can show that he has placed the money in his hands; he has made him his agent, not by any receipt given at the time he gave him the money, but after all the money is given, after the expenses have been paid, then he comes to him and tells him he has to get up his account and he wants a receipt, and

then the receipt is gotten up. May we not show what this man actually did do in the canvass which he made for H. O. Bechtel, and what amount he gave out in money and in liquor? H. O. Bechtel has made him his agent.

Judge MARR: Both my colleague and myself have given the questions which we thought would arise in this case considerable thought and examination, and the different authorities upon this matter, so that when the questions would come up, we could meet them with some knowledge in reference to how these questions had been ruled by other courts, or questions of a similar character. We both feel that the objection to this question here is well taken, unless counsel first show that the acts complained of as having been committed by the witness upon the stand were done with the knowledge or consent of the candidate. It does seem to me that to hold contrary would be placing a very great hardship upon every man who is a candidate for office. It is very questionable in my mind whether the legislature, in this act of assembly which is passed and on which this controversy is now waged, ever intended to place the construction upon it as claimed by counsel who raised this question, and as there is nothing to connect the candidate, either directly or indirectly, as I look upon it, with any improper expenditure of money, we think the objection ought to be sustained. It seems to me that to sustain evidence of that kind might put a candidate in a very serious position, if some party would profess friendship for him and pretend to act in good faith as his representative, in assisting him in his canvass, and at the same time might be betraying him by committing illegal acts, and then to hold the candidate responsible for those illegal acts would be a hardship. That is one of the conclusions, it seems to me, that would necessarily follow from the line of argument which has been urged by counsel who demand the admission of this testimony. We would prefer that a higher court should say that a rule of this kind, or a burden of this kind, I should say, shall be placed upon a candidate, than myself or even my colleague, as I understand it. The objection is sustained.

Petitioners except. Bill sealed. [4]

C. W. Lutz was asked this question:

"Q. Did you have a conversation with Judge KOCH there? A. Yes, sir."

Mr. Reilly: Objected to as incompetent, immaterial and irrelevant; and, further, that counsel for the petitioners have no right, under the rules of evidence, to cross-examine their own witness.

Judge MARR: The mere question is, did he meet Judge KOCH? He has answered that question, and we will allow it to stand.

Mr. Schalck: We want a purpose.

Mr. Smith: We propose to show that the statements of the witness, previously made, are in contradiction of what he has testified to, and it is a surprise to counsel for petitioners; and we claim the right now to show that by the further examination of the witness.

Mr. Farquhar: We may cross-examine our witness where we allege surprise.

Judge MARR: You have a statement on record that you are surprised at the answers of this witness. That may be true, nobody is contradicting it; but I do not think the mere fact that you are surprised would justify the introduction of testimony or conversations between him and Judge KOCH at a time when the party whose account is here being contested was absent.   We think we will sustain the objection.

Mr. Smith: We propose to prove by the witness on the stand, in addition to the facts alleged in the offer already made, that he communicated to Judge KOCH, on or about August 21, 1907, the fact that he had been offered by H. O. Bechtel the sum of $175 to quit the "Frackville Star," that was then about to publish a special political edition bearing particularly on the candidacy of H. O. Bechtel for judge. We propose further to show that later the witness on the stand wrote to U. G. Mengel, the proprietor of that paper, that he had been bought, and that he severed his connection with the " Frackville Star "; to be followed by further evidence of the fact that the witness on the stand declared, at a later time than the conversation with Judge KOCH, that he had been paid $175 by H. O. Bechtel for the same purpose.

Mr. Schalck: For what purpose?

Mr. Smith: For the purpose of inducing him to leave the "Frackville Star." All of which is offered for the purpose of showing the expenditure of money by H. O. Bechtel in violation of the act of assembly, and for the purpose of showing expenditure of money by H. O. Bechtel that is not accounted for in the account filed; and for the further purpose of refreshing the witness's memory as to the transaction, as to the facts.

Mr. Reilly: It is objected to as incompetent, irrelevant and immaterial. The witness having already been examined by counsel for the petitioners, and having testified in his examination in chief that he did not have any conversation with H. O. Bechtel, the candidate·for judge, whose account is now being audited, or receive from him any money during the campaign, the petitioners cannot now contradict their own witness by offering to give in evidence any declarations to the contrary, that the witness may have made out of court to another person, in the absence of or when H. O. Bechtel, the candidate, was not present. It is further objected to, that the offer does not state or propose to prove that any moneys so alleged to have been paid as stated in the offer, were paid for the purpose of influencing either the witness or any other person, or of the election of H. O. Bechtel as a candidate, in any way.

Mr. Schalck: And that the alleged declarations of this witness to the parties here referred to in the question, are wholly incompetent and irrelevant, and do not prove or tend to prove what is charged against the accountant in this case.

Objection sustained.

Petitioners except. Bill sealed. [5]

"Q. Since reading this letter, state whether or not it does not refresh your recollection as to the fact whether or not you received money to quit your position on the 'Frackville Star.'"

Mr. Reilly: Objected to, unless it is proposed to show or prove it was from the candidate; and it is further objected, that that subject has already been inquired of, and counsel for the accountant object to this constant repetition, cross-examining their own witness on the same subject. I object

to a repeated examination of their own witness on the same subject-matter, and appeal to the court to limit it.

Mr. O. P. Bechtel: We also add to the objection, that it is not proposed to show that any money was paid to influence his vote or to induce him to support this candidate, or to make any other interests for this candidate, unlawfully.

Mr. Smith: The offer was to show money expended in the political campaign and that was required to be entered into the account, and we offered to show that the money was not entered into the account.    But the question before the court now is as to the right to cross-examine our own witness.

Question read.

Mr. Reilly: My objection was that the question does not state it was from this candidate, and the witness has testified he has not received any money from this candidate, and it is immaterial and irrelevant whether he received any money from anybody else.

Objection sustained.

Petitioners except.  Bill sealed. [6]

John F. McGinty was asked this question:

"Q. State whether you have had any interviews with H. O. Bechtel during the campaign? A. I did, yes.  Q. State whether in pursuance of those interviews you used money and liquor in the campaign? "

Mr. Reilly: Objected to as incompetent, immaterial and irrelevant, that they must first prove that the money or liquors so used were used unlawfully and with knowledge and consent or by the direction of the candidate.

Judge Marr: We sustain the objection.

Petitioners except.  Bill sealed. [7]

The court made the following order:

And now, July 27, 1908, it is herewith decided that the account in this case is not false in any manner, that no illegal expenses have been incurred, that the petition be dismissed and the costs of these proceedings be paid by the petitioners.

*Errors assigned* were (1) the order of the court; (2, 3) refusal

of petitioners' requests; (4-7) rulings on evidence, and (8, 9) allowance of amendments.

*Guy E. Farquhar* and *Cyrus G. Derr*, with them *Edmund D. Smith*, for appellants.—The payments to Nichter were illegal because he was to disburse the money and was neither a candidate nor a member or treasurer of a political committee; he was not compelled to file an account, and was responsible to no one except the accountant, and to him he rendered no account.

To hold that money for the purposes of disbursement can be paid by a candidate to one who is not a candidate or a treasurer bound to file a sworn statement as provided by the act, or to hold that a candidate may pay money to an organization to employ canvassers among its members, would be to nullify the act, and construe it contrary to the plain intent of the legislature as shown by the spirit and reason of the law, by considering the effects and consequences which will follow from such a construction, and by considering the mischief sought to be corrected and the remedy provided by the act: Whitmire v. Township of Muncy Creek, 17 Pa. Superior Ct. 399.

The provision of the act of 1874 permitting the incurring of lawful expenses "through other individuals," is omitted from the act of 1906, for the evident purpose of effecting such a change in legislation as would make the remedy of existing evils in elections possible and without which change the act of 1906 would be a dead letter: Johnston's Est., 33 Pa. 511; Reeves's App., 33 Pa. Superior Ct. 196; Com. v. Fraim, 16 Pa. 163; Big Black Creek Imp. Co. v. Com., 94 Pa. 456.

The effect and consequence of a proposed construction of a statute, as well as its reason and spirit, are to be considered in determining its validity: Whitmire v. Muncy Creek Twp., 17 Pa. Superior Ct. 399; Appeal of City of Scranton School District, 113 Pa. 176; Scranton City v. Ansley, 34 Pa. Superior Ct. 133; Pettit v. Fretz, 33 Pa. 118; Umholtz's License, 191 Pa. 177; Jones v. Beale, 217 Pa. 182; Com. v. Philadelphia County Commissioners, 2 S. & R. 193; Com. v. Shaleen, 215 Pa. 595.

The general question will be this.  The law has decided that a candidate at an election is responsible for the acts of agents,

who are not, and would not necessarily be, agents under the common law of agency: Wakefield's Case, 2 O'Malley & Hardcastle's Election Cases, 102.

The court erred in placing the costs of the proceeding on the petitioners.

*O. P. Bechtel* and *W. U. Hensel*, with them *Jas. J. Bell, M. M. Burke, J. B. Reilly,* and *A. W. Schalck* for appellee.—The amendments were proper: Com. v. Haines, 39 Legal Int. 5; Johnson v. Com., 115 Pa. 369; Com. v. Silcox, 161 Pa. 484; Com. v. Preston, 188 Pa. 429.

The findings of fact are conclusive: Com. ex rel. v. Stevens, 178 Pa. 543; Steinmeyer v. Siebert, 190 Pa. 471; Hancock v. Melloy, 187 Pa. 371; Byers v. Byers, 208 Pa. 23; Gay v. Chambers, 37 Pa. Superior Ct. 41.

The candidate had the right to give money to another person to be lawfully expended: Duffy v. Mason, 1 Ellsworth, 361; Rennick v. Hodgins, Elect. Cases, 70; Wheeler v. Gibbs, 4 Canada Sup. Ct. 430; Miles v. Roe, 1 Ont. Elect. Cases, 41; Com. v. Johnston, 2 Pa. Superior Ct. 317.

The act of 1906 does not repeal any part of the act of 1874: Com. v. Decamp, 177 Pa. 112; Uhler v. Moses, 200 Pa. 498; Boileau's Case, 2 Pars. 503.

OPINION BY HEAD, J., April 19, 1909:

A number of important propositions, strongly urged upon us at the argument of this cause, have been practically disposed of by the decisions, since the argument, In re Likins, 37 Pa. Superior Ct. 625, 637, and the affirmance of both of those judgments by the Supreme Court. Following these decisions we must hold the Act of March 5, 1906, P. L. 78, commonly called "The Corrupt Practices Act,"—at least as to the several sections thereof involved in this appeal—to be a valid and constitutional enactment. The motion to quash the appeal, because of the alleged invalidity of the act, must therefore be denied.

In this case we have to deal more particularly with the administrative portions of the act prescribing the procedure, or providing the machinery, so to speak, by which the primary

legislative design is to be made operative and effective. The act, generally speaking, belongs to that class of legislation called remedial. It was enacted at a special session of the legislature summoned by the governor, and was the legislative response to a vigorous demand by the people, that a remedy be found to stop the corruption fast becoming an incident of our popular elections which, if unchecked, would soon destroy the free and honest expression of the will of the people. If possible, the construction of such a law should always be such that the legislative intent may be accomplished, ut res magis valeat quam pereat. And the application of this rule, as to an act generally, is none the less demanded even if it should appear that it contains certain penal provisions. In Com. v. Shaleen, 215 Pa. 595, Mr. Justice STEWART says: "That part of the act we are considering calls for liberal construction; it is not penal but beneficial and remedial, and is to be construed so as to give effect to the legislative intent. 'There is no impropriety in putting a literal construction on a penal clause, and a liberal construction on a remedial clause in the same Act of Parliament.' . . . The same rule has been frequently applied, in our own cases, and only very recently by the present Chief Justice in Stull v. Reber, 215 Pa. 156."

Turning then to the statute we find that it recognizes, as lawful, the expenditure of money for "election expenses," provided such expenditure is confined to the purposes and objects specifically set forth in the act. But the persons who may make even such lawful expenditures are confined to two classes, to wit, candidates and treasurers of political committees. The individual citizen may still lawfully give his money to aid the success of the political party or the advancement of the political cause he deems most desirable. But he may not do this by undertaking himself the expenditure of even his own money for "election expenses." He must contribute it directly to a candidate or to a political committee because only through one of these two channels can it lawfully be expended for even the purposes designated in the act. "No person who is not a candidate, or the treasurer of a political committee, shall pay, give or lend or agree to pay, give or lend any money

or other valuable thing, whether contributed by himself or by any other person, for any election expenses whatever, except to a candidate or to a political committee," is the comprehensive language of the statute.

As one of the means adopted to compel obedience to the legislative requirement that even a candidate must confine the expenditure of money, contributed by himself or others, to the purposes specified as lawful, the act requires such candidate to "file (in case the office sought is a county office) with the clerk of the court of quarter sessions, a full, true and detailed account, subscribed and sworn or affirmed by him, setting forth each and every sum of money contributed, received or disbursed by him for election expenses, the date of each contribution, receipt and disbursement, the name of the person from whom received, or to whom paid and the object or purpose for which the same was disbursed. . . . Every such account shall be accompanied by vouchers for all sums expended exceeding ten dollars in amount."

Manifestly the purpose of this enactment was to compel the candidate to place upon the public records such clear and detailed information, described in the foregoing language, as would enable the people to determine, after an inspection of his account with the accompanying vouchers, whether he had obeyed or violated the mandates of the law in which they were so vitally interested. But, considering the nature of the evil aimed at, had the legislature stopped here the alleged remedy would have scarce deserved the name. The act, however, further provides " for an audit of such account" by the court of quarter sessions. This important function of the court, so necessary to make effective the previous requirement that an account be filed, does not become operative until called into activity by the petition of five electors of the county praying for the audit. Thus the lawmaker seems to have recognized that truth, attested by the common experience of men, that the most potent factor in the steady enforcement of a law, is the existence, in the community affected, of a vigilant public spirit demanding its enforcement.

When the account has thus been brought into court and the

time and place of audit have been fixed, the act requires that
the accountant appear in person "to vouch his account and
answer, on oath or affirmation, all such relevant · questions
concerning the same as may be put to him by the petitioners
or their counsel. . . . If, upon the audit, the court shall decide
that the account was false in any substantial manner, or that
any illegal expenses were incurred, the costs of said audit shall
be paid by the accountant; but otherwise by the petitioners."

It is manifest, therefore, that even an account which exhibits
no illegal expenditure may be "false in a substantial manner"
within the meaning of the act and thus require the imposition
of the costs of the audit upon the accountant. In construing
the expression quoted we are to keep before us the legislative
declaration as to what shall constitute the account required.
When, in legal phraseology, we speak of a true account, we have
in mind one that fills up the measure, conforms to the standard
and exhibits the attributes prescribed in the law which com-
mands the filing of the account.

In the act now before us the legislative command is that the
account shall be "full, true and detailed," and shall disclose
the information specified in the language we have already
quoted. In the narrowest sense of the word, an account might
be true which was neither full nor detailed, which contained
but a single item showing the payment of a large sum, in bulk,
to some person, but which in no sense exhibited the information
demanded by the law. True in fact as to what it actually did
disclose, but untrue, false within the meaning of the act, in its
failure to obey the mandate of the law, and account for that
money in the manner and to the extent required by the law-
maker. It was because of the contemplated possibility that a
candidate might neglect or refuse to file such an account as is
required, that the legislature conferred upon the electors the
right to have the account audited; and it was upon such failure
or refusal, even when not resulting from an intent to deceive,
that the act intended to operate, by imposing the costs on the
accountant, because, in such case, there would be accomplished
only by the audit what should have been effected by the mere
filing of the account.

In the present appeal the accountant was a candidate for the office of judge of the courts of Schuylkill county. At the general election in November, 1907, he was duly declared elected, his commission issued, he took the oath and is now performing the duties and exercising the functions of his high office. After his account had been filed, a petition for an audit was presented to the court and the audit followed. It was personally conducted by two judges of the county sitting together. They were familiar with local conditions, the general character of the people in the several sections of the county, and probably were personally acquainted with many of the witnesses. They saw and heard those who testified and have found the facts. While the act allows an appeal "from the decision of the court upon the audit," we can see no good reason why we should not give to the findings of fact the same force and effect here, that would attach to similar findings by an auditing judge in the orphans' court or a common pleas judge sitting in equity. Following this principle, and being unable to discover any manifest error or abuse of discretion on the part of the court below we must accept the facts as found.

But it has long been held that the rule referred to is to be confined, in its application, to pure questions of fact; it cannot and should not, for reasons often stated, affect the action of the appellate court as to the inferences to be drawn from established facts or to mixed conclusions of law and fact.

Without attempting to take up separately the assignments of error, we may say that several of them complain of the rulings of the court below in admitting or rejecting evidence against the objection of the petitioners. The learned court took pains to place on the record, in each instance, their reasons for the conclusion they reached. We find no reversible error in any of these rulings and, regarding them as being sufficiently vindicated in the record as now made, there would be no advantage in attempting to further elaborate them. The fourth, fifth, sixth and seventh assignments are dismissed.

The eighth and ninth assignments complain of orders made by the court as to amendments. These were questions to be disposed of in the exercise of the sound discretion of the trial

court. We cannot say that such discretion was abused, and the assignments must be dismissed.

The second item in the account as stated is as follows: "October 30, 1907, J. H. Nichter as per receipt $700.00." The portions of the accompanying receipt to which we wish more particularly to refer are as follows: "Received of H. O. Bechtel the sum of seven hundred dollars . . . this money to be expended strictly in accordance with the Act of Assembly approved the 5th day of March, 1906, . . . . and it is expressly understood and agreed that no one person shall be paid a sum exceeding in amount the sum of ten dollars."

It is conceded that Nichter was himself neither a candidate nor the treasurer of any political committee. It was impossible, therefore, that he could lawfully expend any money for "election expenses." The third section of the act, hereinbefore quoted, flatly forbade his doing so. All that he was permitted to do with either his own money, or with money coming to him from any source, was to turn it over to a candidate or to some committee whose treasurer could lawfully expend it.

If, therefore, we regard the transaction evidenced by the receipt as an expenditure of $700 by Nichter, for election expenses, it would be difficult to avoid the conclusion that the candidate, who furnished money to be expended by one whom the act forbade to engage in that business, was himself responsible for an illegal expenditure. But we cannot so view it. The whole tenor of the receipt is to the effect that by the mere transfer of the money from the hand of the candidate to that of Nichter, no expenditure had yet occurred. By accepting the money, on the conditions fixed by the candidate, Nichter agreed that he would thereafter expend the money as directed. In other words, the expenditure that was to follow, whilst made by the hand of Nichter, was made by the will and under the direction of the candidate, and consequently was his act. Thus considered it was a lawful expenditure, provided it was confined to the legitimate subjects of expenditure named in the act.

But it is contended that although a candidate in person may lawfully expend money for proper purposes, he may not author-

ize another to act as his agent or representative in that behalf. We cannot accede to this contention. The Act of April 18, 1874, P. L. 64, legislating on the same general subject covered by the act of 1906, after declaring the purposes for which a candidate might lawfully expend money, provides: "The foregoing expenses may be incurred, either in person or through other individuals," etc. We find nothing in the act of 1906 so inconsistent with or repugnant to this provision of the earlier act as to warrant us in saying the former repealed the latter.

Moreover, the act of 1906 applies to candidates for state as well as county offices. If a state candidate may lawfully expend money, in any number of widely scattered sections, for printing, for dissemination of information, payment of clerks, transportation of voters, etc., what sound reason can be urged for holding that he must go in person and put his money into the hands of the printer, liveryman, clerk, etc., but cannot permit another to act for him in doing so?

But if a candidate acts through or by another, it is still he that acts, and when he accounts he must account for all that he has done. Now the evidence taken at the audit and the findings of the court thereon establish that the expenditure made by the candidate through Nichter was, in fact, lawful. That should have appeared in his account. As it did not the audit was made necessary in order that the all-important fact might appear. We think, therefore, the account as filed furnished the warrant for the demand of the petitioners that it be audited, and as a consequence the learned court below was wrong in imposing the costs on them. All that we have said of the second item of the account is equally true of the first where the transaction was substantially the same, differing only in amount. All of the assignments of error save the first are dismissed. The first assignment must be sustained to the extent that the petitioners be relieved of the payment of the costs and that the same be imposed on the accountant.

It is ordered that so much of the decree entered by the court below as declares that the account is not false in any manner and that the costs be paid by the petitioners be reversed and

set aside and that the court below then direct that the costs of the proceedings be paid by the accountant. The costs of this appeal to be paid by the appellee.