# Umbel's Election.

*Courts—Judges—Interested judge—Calling in outside judge—Additional judge—Acts of April 22, 1856, P. L. 500, April 2, 1860, P. L. 552, May 1, 1861, P. L. 494, April 9, 1874, P. L. 54, August 7, 1883, P. L. (1885) 323, June 15, 1887, P. L. 404, June 12, 1895, P. L. 190, and July 18, 1901, P. L. 669.*

1. In a county where there are two judges, the additional law judge is qualified to try a contest growing out of the accounts of the election expenses of the president judge. In such a case it is not necessary to call in an outside judge from another county as provided by the Act of April 22, 1856, P. L. 500. Com. ex rel. v. White, 161 Pa. 576, distinguished.

*Constitutional law—Title of statutes—Election and powers of additional law judges—Acts of April 9, 1874, P. L. 54, August 7, 1883, P. L. (1885) 323, June 12, 1895, P. L. 190, and July 18, 1901, P. L. 669.*

2. The titles of the Acts of April 9, 1874, P. L. 54, August 7, 1883, P. L. (1885) 323, June 12, 1895, P. L. 190, and July 18, 1901, P. L. 669, are sufficient to give notice of the general scope of the acts, particularly as to the election and powers of additional law judges.

*Election law—Expenditures of candidates—Accounts—Act of March 5, 1906, P. L. 78.*

3. An account of a candidate for nomination showing expenditures made in his behalf to secure the nomination, is insufficient under the Act of March 5, 1906, P. L. 78, if it shows moneys paid by the candidate to individual agents of his own to be used on his behalf, but fails to show for what purposes the moneys thus intrusted to the agents were used.

4. An account which merely exhibits the fact that the candidate has deposited money in the hands of an agent to be used for legitimate expenses, and does not show the person to whom, and the purpose for which, the agent paid the money, is not such "a full, true and detailed account," as the act of 1906 plainly contemplated.

5. To be a true account within the spirit and intent of the act, it must set forth each and every sum of money disbursed by the candidate, whether personally, or by his agent for election expenses, the date of each disbursement, the name of the person to whom paid, and the object or purpose for which the same was disbursed; and, moreover, the account must be accompanied by vouchers for all sums expended exceeding $10.00 in amount. Filing the receipts of his agent for the money placed by him in their hands does not fully meet the requirements of the act.

6. In a contest over a candidate's account, an agent to whom the candidate intrusted money to be expended, may be asked to give a detailed statement of the manner in which he expended the sums intrusted to him, without any preliminary proof that the candidate knew and consented to the disbursement of the moneys by the agent for illegal purposes. Bechtel's Election Expenses, 39 Pa. Superior Ct. 292, distinguished and explained.

7. The agent of the candidate may be asked whether he had spent the moneys received by him from the candidate in the purchase of a vote, or whether he had used moneys of his own for such a purpose with the candidate's knowledge and consent.

8. An offer to prove that the agent expended moneys received from the candidate for the purchase of votes to be followed by further proof that such practice and means of getting votes was known to and consented to by the candidate, should be admitted.

9. In a contest over a candidate's account of expenditures it is not competent upon cross-examination of the candidate to inquire as to his motive in permitting his counsel to raise objections which they deemed proper to the offer or admission of testimony.

10. Where a candidate includes in his account the price of a box of cigars, he is not estopped by the fact that he included such an item in his account, from showing that the use of the cigars was but the common courtesy which men extend to friends without any thought on his

part or their part that the latter would be influenced in their votes thereby.

Argued April 18, 1910.   Appeal, No. 125, April T., 1910, by R. I. Patterson, from order of Q. S. Fayette Co., June Sessions, 1910, No. 257, dismissing petition for audit In re Audit of Account of Robert E. Umbel, Candidate for Democratic Nomination to the Office of Judge.   Before RICE, P. J., HENDERSON, MORRISON, OR-LADY, HEAD, BEAVER and PORTER, JJ.   Reversed.

Petition for audit.   Before VAN SWEARINGEN, J.

From the record it appeared that on July 13, 1909, VAN SWEARINGEN, J., made an order dismissing a petition to have the proceedings heard and tried before JAMES INGHRAM, the president judge residing nearest the place of trial. [1]

At the trial when Henry Bell was on the stand, the following offer was made:

The account showing a payment in lump sum on June 3, 1909, to S. E. Frock of the sum of $1,050, we propose to show by the witness on the stand that part of the money received by Mr. Frock from the accountant was expended by him in the purchase of this man's vote, to be followed by further testimony that such practice and means of getting votes was known to and consented to by the accountant.

Mr. Higbee: Objected to by accountant unless it is first shown by proof that the accountant had knowledge and notice of what is offered to be proved, and generally as incompetent and irrelevant.

Mr. Stevenson: I take it we have a right to prove it this way and show the knowledge afterwards.

The Court: Until it is first shown that this was done with the knowledge or consent of the candidate, the objection is sustained.   Exception to petitioners.

Mr. Stevenson: I make a further offer to prove by the witness on the stand that in that booth, the voting booth in the second ward of Uniontown, on the day of the pri-

maries, Mr. S. E. Frock paid this witness $3.00 of the money received by him from the accountant and in return for it marked this witness' vote for the accountant as a candidate, to be followed by other evidence that this act was with the knowledge and consent of the accountant.

Mr. Higbee: That is objected to unless it is first shown by evidence that the act was done with the knowledge and consent of the accountant, and, further, as generally incompetent and irrelevant.

The Court: It has already been decided by the Superior Court that acts of this kind cannot be proved unless it is first shown that they were performed with the knowledge or consent of the candidate. For that reason the objection is sustained. Exception to petitioner. [2]

S. E. Frock, a witness for petitioners, was asked this question:

"Q. Did you, or did you not, spend this money for the purposes mentioned in these different sections?"

Mr. Higbee: Objected to for the reasons given in the preceding objection.

The Court: State your purpose, Mr. Stevenson.

Mr. Stevenson: The witness having certified over his hand that this sum of $1,050 was to be expended under the first, second, sixth, seventh and eighth paragraphs of sec. 4 of the act of 1906, I propose to ask the witness whether or not he did expend this sum under these sections.

The Court: The objection is sustained. If the purpose is to show an illegal expenditure, it is incompetent until it be first shown that the illegal expenditure was made with the knowledge and consent of the candidate. Exception to petitioners. [3]

"Q. Did you expend it ($1,050) in pursuance of this act of 1906?"

Mr. Higbee: That is objected to for the same reason as given in support of the preceding objection.

The Court: Have you no purpose?

Mr. Stevenson: No further purpose than to ascertain

whether or not this receipt and voucher and the item in the account are correct and true, and to be followed by further evidence in addition to his own admissions, that he received this money from Mr. Umbel for this purpose, thus constituting himself, or being constituted, the agent of the candidate to make these expenditures, and generally for the purpose of ascertaining whether or not this account is correct and true.

Mr. Higbee: Objected to for the reason given in support of the preceding objection.

The Court: As we have already stated, if the purpose is to show any illegal expenditure, we think it incompetent until it first be shown that the illegal expenditures were made with the knowledge or consent of the candidate; and until this is done the objection is sustained. Exception to petitioners. [4]

"Q. Did you expend any of this money for the dissemination of information?"

Mr. Higbee: That is objected to.

Mr. Stevenson: That is a legal expenditure.

The Court: The objection is sustained. Exception to petitioners. [5]

Mr. Stevenson: For the purpose of showing the details which the act of assembly requires, I propose to ask the witness to give us a detailed statement of the manner in which he expended this $1,050. This, also, for the purpose of ascertaining whether or not the statement made in this receipt that it was spent under the act of 1906 is or is not correct.

Mr. Higbee: Objected to for the reason that if the expenditures were lawful it is immaterial, and if they were not lawful there is no evidence yet offered showing that such expenditures were made with the knowledge or consent of the candidate, and generally as incompetent and irrelevant.

Mr. Stevenson: Your honor, there is evidence that he reported these expenditures to the candidate.

The Court: For the reasons repeatedly stated by the

court, the objection is sustained. Exception to petitioners. [6]

B. F. Sterling, a witness for petitioners, was asked this question:

"Q. The account shows, Mr. Sterling, that you received $250 on May 20; $300 on June 1; $400 on June 4, and $220 on June 8. I ask you to give, so far as you can, a detailed statement of the manner in which you expended that sum of $1,170?"

Mr. Higbee: For what purpose?

Mr. Stevenson: For the purpose of showing whether or not the receipt given by the witness and the amounts taken credit for in the account are true and correct as certified by the receipt itself and also by the affidavit of the candidate, and for the purpose of getting a detailed statement as required by the act of assembly.

Mr. Higbee: Objected to as incompetent and irrelevant and immaterial, for the reasons as set out in extenso in connection with the preceding offer.

The Court: The objection is sustained. Exception to petitioners. If you want to ask him if he got any other money you may. [7]

"Q. I ask the witness on the stand to give us a detailed statement as to the manner, the amount, the dates and the persons to whom paid, of the item of $250 received by him on May 20, and being the amount mentioned in his receipt No. 17.

Mr. Higbee: The accountant interposes the same objection as to a similar question propounded to the witness Frock.

The Court: For reasons already stated by the court when practically the same question was asked a preceding witness, the objection is sustained. Exception to petitioners. [8]

"Q. I also ask the witness to give me as near as he can the names of the parties to whom this money was paid, the dates when paid, the purpose for which it was paid, covering this entire expenditure of $1,170?"

Mr. Higbee: The accountant interposes the same objection.

The Court: For reasons already given by the court, the objection is sustained. Exception to petitioners. [9]

Mr. Stevenson to accountant:

"Q. Then, I ask you, if this money was all properly expended, why you should object, through your counsel, to these witnesses stating for what purpose they expended this money and to whom?"

Mr. Higbee: That is objected to. He is not trying the case; we are.

The Court: The objection is sustained. Exception to petitioners.

"Q. I will ask the witness if he has any objection to answering the question?"

Mr. Higbee: That is objected to.

The Court: The objection is sustained. Exception to petitioner. [10]

"Q. Would it not be possible for you, judge, to secure itemized accounts of these expenditures?"

Mr. Higbee: That is objected to.

The Court: He can answer whether he could or not.

"A. I do not know. Q. Would you be willing to get them?"

Mr. Higbee: That is objected to as incompetent and irrelevant.

The Court: The objection is sustained. Exception to petitioners. [11]

Mr. Stevenson to D. W. McDonald, a witness for petitioners:

"Q. Mr. McDonald, did you receive and expend any other moneys in behalf of the candidate with the knowledge or consent of the candidate?"

Mr. Higbee: That is objected to.

The Court: For the reasons given by the court on objections to practically the same questions asked previous witnesses, and for the further reason that it now appears

of record that the candidate authorized no other expenditures of money than those set out in his account, and had no knowledge that such were made, if there were any made, and did not consent to any such, the objection is sustained. Exception to petitioners. We understand this question to mean any other moneys from any other person than the accountant. [12]

The court found, inter alia, as follows:

[The accountant had no reason to believe, and had no knowledge, that any money was being spent in his behalf illegally, if any money was so spent.] [13]

[The accountant had no knowledge of, and did not consent to, the expenditure of any portion of the above sums of money for illegitimate or unlawful purposes. If any such expenditures were made it was in disobedience of the instructions of the accountant.] [14]

[No question is raised as to the legality of any of these expenditures, except to the payment to "Markell's Drug Store, for one box of cigars, $3.00." These cigars were not used for the purpose of influencing voters, but as a matter of personal entertainment at a meeting held in the interest of the accountant by a few of his close, personal and political friends, who were already actively at work in his behalf, and who would not be influenced in any particular by a box of cigars.] [15]

[The account includes a statement of all moneys expended by the candidate in connection with his nomination.] [16]

[No illegal election expenses were incurred by the accountant, and he had no knowledge of and did not consent to the incurring of illegal election expenses by his agents or representatives or any other persons. His account filed is true in that it contains a statement of all moneys expended by him.] [17]

[And now, November 5, 1909, for the reasons set forth in the opinion herewith filed, it is ordered that the petition be and is now dismissed, and that the costs be paid by the accountant.] [18]

*Errors assigned* were (1–18) the various rulings and findings above set forth.

M. H. *Stevenson*, with him S. *John Morrow, Frank P. Rush* and H. S. *Dumbaugh*, for appellants.—An outside judge should have been called: Com. ex rel. v. White, 161 Pa. 576; Evans's App., 152 Pa. 401; Road in Phœnixville, 109 Pa. 44; Mansfield's Case, 22 Pa. Superior Ct. 224; Likins's Petition, 37 Pa. Superior Ct. 625; Bradbury v. Wagenhorst, 54 Pa. 180; Com. v. American Car & Foundry Co., 203 Pa. 302; Penna. R. R. Co. v. Pittsburg, 104 Pa. 522; Com. v. Kevin, 202 Pa. 23; Allegheny County v. Gibson, 90 Pa. 397.

It was competent to ask agents how lump sums were spent: Bechtel's Case, 39 Pa. Superior Ct. 292.

The ruling that knowledge or consent on the accountant's part must first be shown, is erroneous.

The expenditures of money to procure one's nomination or election to office are prima facie illegal.

E. C. *Higbee*, of *Sterling, Higbee & Matthews*, with him W. C. *McKean* and D. M. *Hertzog*, for appellee.

OPINION BY RICE, P. J., July 20, 1910:

At the primary election held on June 9, 1909, the respondent was a candidate for nomination, and was nominated, as a candidate for election to the office of judge of the court of common pleas of Fayette county. On June 19 following he filed an account of his expenses under the Act of March 5, 1906, P. L. 78. Upon the petition of the requisite number of qualified electors of the county, setting forth that the account was not such a full, true and detailed account as is required by the provisions of said act and did not meet the requirements of the same, that the petitioners were informed, believed and expected to be able to prove that the account was incomplete and incorrect and that large sums of money were disbursed contrary to law for the purpose of securing the nomination

of the respondent, the court made an order, as provided in sec. 9 of the act, directing the clerk to certify the account to the court for audit. On July 13, 1909, the petitioners' counsel suggested that the respondent was president judge of the district and moved the court, the Honorable J. Q. VAN SWEARINGEN, additional law judge of the district, then presiding, to order and direct, under the Act of April 22, 1856, P. L. 500, that the proceeding be tried and heard before the Honorable JAMES INGHRAM, president judge of Greene county, he being the president judge residing nearest the place of trial and being disinterested. This motion was overruled and excepted to. It was renewed on the audit and again overruled and excepted to.. Judge VAN SWEARINGEN presided at the audit, and from the decree of court made by him dismissing the petition and directing the costs to be paid by the respondent we have this appeal by the petitioners.

The subject of the first assignment is the refusal of the motion above referred to. The act of 1856 reads as follows: "That whenever a president judge shall be a party in any suit, prosecution or proceeding in any court over which he presides, such suit, prosecution or proceeding shall be tried and heard before the president judge residing nearest the place of such trial who shall be disinterested." This act was quite elaborately considered in the case of Com. ex rel. v. White, 161 Pa. 576; but the precise question raised in that case was not the same as the question raised in this case. There the president judge of Indiana county, being the only judge in the district, was a party to a suit. He filed of record an order certifying the cause to be heard by the president judge of Butler county. To his answer to the petition for mandamus to compel him to certify the cause to the nearest president judge, the relators filed a replication and exceptions to the effect that the judge of Butler county was not the judge pointed out by the act of assembly as the one to whom the cause should be referred. This view was sustained by the Supreme Court and it was held that, in

designating the judge before whom the cause should be tried, the respondent was bound by the plain terms of the act of 1856. The question, whether the cause could have been tried before an additional law judge of Indiana county, did not and could not arise in that case, because there was no such judge. The necessity of certifying the cause to an outside judge was, therefore, imperative, and, upon a review of the act of 1856, the Act of April 2, 1860, P. L. 552, and the supplement of May 1, 1861, P. L. 494, the conclusion was reached that no discretion was left in the ineligible judge to select the judge before whom his case should be tried. Upon this subject Mr. Justice MITCHELL said: "But where the president judge is a party it is in every way desirable, if for no other reason for the avoidance of any personal questions or feeling such as have unfortunately arisen in this case, that nothing should be left to the choice or discretion of the interested judge, but that the law should point out, by a fixed and mandatory rule, the judge to whom the case should be committed for trial." In the present case it was not necessary, in order to a trial before a competent and disinterested judge, that the president judge should take any action whatever. By the Act of April 9, 1874, P. L. 54, and the Act of August 7, 1883, P. L. (1885) 323, designating the judicial districts of the commonwealth, the fourteenth district was comprised of the county of Fayette, to which the county of Greene was attached, and was entitled to one judge learned in the law. By the Act of June 15, 1887, P. L. 404, the office of additional law judge in this district was created, and it was declared that he shall possess the same qualifications which are required by the constitution and the laws for the president judge, shall be commissioned by the governor and hold his office by the same tenure as other judges of courts of record required to be learned in the law and for the same term as the president judge, and shall have "the same authority and jurisdiction in term time and in vacation in the several courts of the said district and be subject to the same duties, provisions and

penalties as the president judge thereof . . . . and shall have the same power and authority to hold special and adjourned courts in his own or other judicial districts as president judges have by existing laws." Section 4 reads: "Each of the judges of the said fourteenth judicial district shall have equal jurisdiction in the civil and criminal courts of the said district; and any one of said judges shall have full power and authority to make all such orders and decrees and render all such judgments as he shall consider just and equitable, in all cases within the jurisdiction of the several courts of the said district, or within the jurisdiction of the president judge thereof." By the Act of June 12, 1895, P. L. 190, designating the several judicial districts of the commonwealth, it was provided that the fourteenth district shall be comprised of the county of Fayette alone and shall have two judges learned in the law; and sec. 7 provided that in all districts in which by the provisions of this act two judges are provided one of them shall be the president judge and the other the additional law judge. With regard to the powers and duties of the additional law judge, the same section expressly provides as follows: "The said additional law judge shall possess the same qualifications which are required by the constitution and laws for the president judge of said district and shall hold his office for a like term and by the same tenure, and shall have the same powers, authority and jurisdiction, and shall be subject to the same duties, restrictions and penalties . . . . as the president judge of said district." Section 7 of the Act of July 18, 1901, P. L. 669, is a verbatim copy of sec. 7 of the act of 1895 to which we have referred. The contention of appellants' counsel, that the titles to the acts of 1874, 1883, 1895 and 1901 are insufficient to give notice of the general scope of the acts, particularly as to the election and powers of additional law judges, has been given due consideration by us and is not sustained. Besides that, there can be no question as to the constitutionality of the act of 1887 creating the office of additional law judge in the fourteenth

judicial district, which, so far as it relates to the powers and jurisdiction of such judge, is the same in substance, although not altogether the same in words, as the acts of 1895 and 1901. We have then a case where the jurisdiction of the court is undoubted and where the judge who presided at the trial was one of the commissioned judges of that court, possessed all of the qualifications required by the constitution and laws of the commonwealth and was disinterested. It is not the case of calling in an outside judge, and we are not convinced that in such a case the act of 1856, when construed in connection with the subsequent legislation to which we have referred, was operative to debar this judge of the court from exercising his judicial functions in the case. There is no more reason for calling in an outside judge in such a case than there would be for calling in an outside judge to try a case to which the additional law judge was a party, and in which the president judge had no disqualifying interest or relationship to the parties. But the president judge undoubtedly would have the power to try such a case as we have last supposed, and, if by construction we reach the conclusion that the additional law judge has not the power to try such a case as we have in hand, then we deny to him the same powers and jurisdiction as the president judge, in the face of the express legislative declaration that he shall have the same powers and jurisdiction. We are of opinion that such conclusion would be contrary to the true intent of the statutes bearing upon the question, and, therefore, the first assignment is overruled.

Preliminarily to a discussion of the questions raised by the assignments of error to rulings upon offers of evidence, it is important to determine whether the account filed by the respondent conforms to the requirements of the act of 1906. The account embraced two classes of items, (1) expenditures made by the respondent personally, (2) payments made by him to certain individuals of certain sums of money "for expenditure in my behalf under the 1st, 2d, 6th, 7th and 8th Ps. of Sec. 4, Act Mar. 5, 1906."

There are twelve items of the latter class, showing payments to five different persons, aggregating $3,670, and these give no further information as to the purposes for which the money was actually expended than is indicated by the words and figures above quoted. The receipts given by the persons to whom the respondent paid the money are equally indefinite. The plain import of the account is that these sums of money were paid to these five persons, not as compensation for their services in disseminating information to the public or in acting as watchers or the like, but to be expended by them in the respondent's behalf for some or all of the purposes mentioned in these paragraphs of the act, or to reimburse them for payments made by them to others in his behalf for these purposes. These persons did not constitute a political committee by whom or by whose treasurer an account was to be or could be filed; they were merely respondent's agents or representatives. Although the candidate for nomination may make expenditures for lawful purposes through an agent, "it is still he that acts, and when he accounts he must account for all that he has done:" Bechtel's Election Expenses, 39 Pa. Superior Ct. 292. An account which merely exhibits the fact that the candidate has deposited money in the hands of an agent to be used for legitimate expenses, and does not show the person to whom and the purpose for which the agent paid the money, is not such "a full, true and detailed account" as the act plainly contemplates. Speaking of this subject, our Brother HEAD said, in the case last cited: "In the act now before us the legislative command is that the account shall be 'full, true and detailed,' and shall disclose the information specified in the language we have already quoted. In the narrowest sense of the word, an account might be true which was neither full nor detailed, which contained but a single item showing the payment of a large sum, in bulk, to some person, but which in no sense exhibited the information demanded by the law. True in fact as to what it actually did disclose, but untrue, false

within the meaning of the act, in its failure to obey the mandate of the law, and account for that money in the manner and to the extent required by the lawmaker." Viewing the account in the light of this construction of the requirements of the statute, we must conclude that the learned judge erred in his findings embraced in the sixteenth and seventeenth assignments of error, wherein he held that the account is true in that it contains a statement of all moneys expended by the respondent in connection with his nomination.

To be a true account within the spirit and intent of the act, it must set forth each and every sum of money disbursed by the candidate, whether personally or by his agent, for election expenses, the date of each disbursement, the name of the person to whom paid, and the object or purpose for which the same was disbursed; and, moreover, the account must be accompanied by vouchers for all sums expended exceeding $10.00 in amount. Filing the receipts of his agents for the money placed by him in their hands does not fully meet the requirements of the act. No reason is suggested in the respondent's account for the omission to set forth in the manner above indicated a detailed statement of the disbursements made by his agents, nor does it appear by his testimony that it would have been impossible for him to do so. Unless these facts can be developed on the audit, one of the manifest purposes of the act can be easily defeated by the omission to give the information in the account itself. Before concluding that the act is so ineffective, it will be well to notice some of its provisions relative to the scope of inquiry permissible on the audit. At the date fixed therefor the person by whom the account has been filed is "required to be present in person, to vouch his account, and answer, on oath or affirmation, all such relevant questions concerning the same as may be put to him by the petitioners or their counsel." Subpœnas may be issued "to all parties whom the petitioners or the accountant may require to give evidence concerning such account,"

and sec. 12 provides: "No person shall be excused from answering any question, in any proceeding under this act, on the ground that such answer would tend to incriminate him; but no such answer shall be used as evidence against such person in any criminal action or prosecution whatever, except in an action for perjury in giving such testimony." If upon the audit the court shall decide "that the account was false in any substantial manner, or that any illegal election expenses were incurred, the costs of said audit shall be paid by the accountant; but, otherwise, by the petitioners." So, also, if the court shall decide "that any person, whether a candidate or not, has incurred illegal election expenses, or has otherwise violated any of the provisions of the act, it shall certify its decision to the district attorney of the county in which such person may reside, and it shall thereupon be the duty of such district attorney to institute criminal proceedings against such person." It is thus seen that the scope of the audit of the account of a candidate for nomination is very broad, and, as pointed out in the case cited, the provisions of the act in this regard, being remedial, are to be given liberal construction. Granting that the ultimate object of the audit is to ascertain whether any illegal election expenses were incurred by the candidate, there is necessarily involved in that inquiry, particularly if the account itself does not show the facts, the ascertainment of the amount of each disbursement made by him and of each disbursement made by his agents of the money placed in their hands, the person to whom paid and the object for which the same was disbursed. As the purpose of requiring an account, to adopt the words of our Brother HEAD, is "to compel the candidate to place upon the public records such clear and detailed information, as would enable the people to determine, after an inspection of his account with the accompanying vouchers, whether he had obeyed or violated the mandates of the law in which they were so vitally interested," so, also, one purpose of the audit of such an imperfect account as this is

to ascertain the facts which are not, but should have been, set forth therein. All of the questions put to the witnesses S. E. Frock and B. F. Sterling (these being persons to whom the accountant paid money for disbursement in his behalf or to reimburse them for expenditures made in his behalf), which are quoted in the third, fourth, fifth, sixth, seventh, eighth and ninth assignments of error, were relevant to the purpose of the audit last referred to. For example, the petitioners proposed to ask the witness Frock to give a detailed statement of the manner in which he expended the $1,050 which the account shows was placed in his hand. The stated purposes of this offer were, (1) to show the details which the act requires, (2) to ascertain whether or not the statement made in the receipt that it was spent under the act of 1906 was or was not correct. The objections to this offer were sustained, and as they show quite plainly the theory upon which all similar offers were objected to and rejected, we quote them as they were stated by counsel: "Objected to for the reason that if the expenditures were lawful it is immaterial, and if they were not lawful there is no evidence yet offered showing that such expenditures were made with the knowledge or consent of the candidate, and generally as incompetent and irrelevant." This theory is entirely inconsistent with the conclusions heretofore stated in this opinion. These witnesses, from whom the petitioners sought to obtain information which ought to have been furnished in the account, were the respondent's agents. It is not to be presumed that the petitioners knew how, to whom and for what purposes they had disbursed all the money. Moreover, as we have endeavored to show, the relevancy of the evidence they tried to bring out by examination of these witnesses did not depend on proof that the money was spent for illegal purposes. The account did not show in detail how it was spent. "As it did not the audit was made necessary in order that the all-important fact might appear:" Bechtel's Election Expenses, 39 Pa. Superior Ct. 292. Therefore, the general

rule that the order of evidence is within the discretion of the trial court has no application to those assignments. For both of the reasons last suggested, the petitioners should not have been required to prove in advance, or to make a distinct and positive offer to prove afterwards, that the respondent's money had been disbursed by these agents for illegal purposes, with the respondent's knowledge and consent. That inquiry would arise when the facts which the account ought to have disclosed were developed. As already suggested, to hold that the petitioners could only inquire of these agents as to the expenditures of the money placed in their hands which the petitioners were able to prove were made for illegal purposes, would be to put a construction on the act which would defeat one of its plain and salutary objects.

It is urged that the rulings complained of in these assignments were in accordance with our decision in the Bechtel case. This position is not sustained by anything that was said by this court in the opinion in that case, and the tenor of the opinion as a whole is clearly opposed to it. But much stress is laid on the fact that we overruled the fourth assignment in that case, and this is urged as a complete vindication of the rulings under consideration here. We cannot agree with the learned judge and the counsel for the appellee in this contention, and a brief review of the facts and considerations which led to the conclusion that that assignment did not contain reversible error will show that the ruling falls far short of sustaining their position in the present case. In the account filed by the respondent in that case appeared this item: "J. H. Nichter as per receipt $700." The receipt appears at page 293 of the report of the case. Nichter was called by the petitioners and was examined fully by their counsel as to the dates when he received the money from the respondent and as to his expenditure of it. He also produced receipts, which were offered in evidence, showing the persons to whom and purpose for which he had paid it. His examination upon the subject as to how he had

spent the $700 was quite full and was not hampered by such objections as were raised in the present case to the examination of the respondent's agents. Then came the question which was objected to, namely, "Did you furnish any liquor during the campaign in the interests of H. O. Bechtel?" This question on its face was not an inquiry as to how he had expended the $700, but was so worded as to cover expenditures that he may have made on his own account for the purposes mentioned. Nor was the question accompanied by a distinct and unequivocal offer to connect the respondent with the expenditure. Indeed, the answer of counsel for the petitioners to the question of the court, while not very clear, tended to show that they could not connect the respondent with it. Upon a full view of the course of the examination of the witness Nichter and the somewhat indefinite and ambiguous character of the question put to him, we were not convinced that the assignment contained reversible error. In order, however, that this ruling may not be misunderstood hereafter, as it apparently was upon the present audit, we remark that if the petitioners' counsel had asked Nichter the direct question whether he had used any part of the money placed in his hands in purchasing liquors to be given to voters, or whether he had furnished liquors to voters with the knowledge and consent of the respondent, or if objection had been made to the questions requiring the witness to give a detailed statement of the persons to whom and the purposes for which he had paid the $700, and the court had, in either of these instances, sustained the objection, a different question would have been raised by the assignment of error and a different ruling ought to have been, and would have been, made thereon. Comment is also made upon our ruling upon the seventh assignment of error in that case. But there, also, the question put to the witness McGinty was ambiguous; it was not in terms or in effect a question whether the witness had furnished liquors to voters, with the knowledge or consent of the candidate. It is plainly

distinguishable from the question the rejection of which is the subject of the twelfth assignment of error. The third, fourth, fifth, sixth, seventh, eighth, ninth and twelfth assignments are sustained.

The offer in the second assignment of error was to prove by the witness Bell "that part of the money received by Mr. Frock from the accountant was expended by him in the purchase of this man's vote, to be followed by further testimony that such practice and means of getting votes was known to and consented to by the accountant." And further on the offer was supplemented by proposing to follow it "by other evidence that this act was with the knowledge and consent of the accountant." There are two aspects in which this offer may be considered. If it had been merely to prove by this witness, who was a stranger to the respondent, that Frock used money in the purchase of votes, without any allegation that it was the respondent's money or that it was used for this purpose with the respondent's knowledge or consent, the relevancy of the offer at the time it was made would not have been apparent. But, being accompanied by an offer to follow it by evidence of the respondent's consent, it would have been proper for the court to have received the evidence upon the presumption that the offer of counsel, that they would follow it by other evidence of the respondent's knowledge and consent, was made in good faith. If they failed to make good their offer the court could have struck out or disregarded the testimony adduced in answer to their questions. But it must be conceded that where the relevancy of an offer of evidence depends upon proof of other facts the trial court has discretionary power, in ordinary cases, to say that proof of these other facts shall precede the admission of the offered evidence, and that, unless this discretion be plainly abused, the appellate court will not reverse. The other aspect in which the offer should be considered includes the proposition that the money used by Frock was part of the money which had been placed in his hands by the respondent to be used

in the latter's behalf.    In this aspect the purpose of the offer was to show how the money had been expended; and for this purpose the evidence was relevant, as we have endeavored to show in the consideration of the provisions of the statute relative to the scope and purpose of the audit.    Of course, we do not mean to be understood as deciding that the candidate would be responsible for the betrayal of the trust reposed by him in his agent.    But as the purpose of the statute is to secure publicity as to the persons to whom and the purposes for which the money supplied by the candidate to secure his election has been paid, it is highly important that a wider latitude should be given in the investigation than would be permissible in a criminal prosecution against the candidate for a violation of the election laws relative to the expenditure of money.    We are of opinion that the offer should have been admitted.    Therefore this assignment is sustained.

The respondent was represented at the audit by counsel. They made the objections which we have been considering undoubtedly in good faith and in the exercise of their judgment as counsel.    It was not competent upon cross-examination of the respondent to inquire as to his motives in permitting his counsel to raise the objections which they deemed proper.    The tenth assignment is therefore overruled.

We cannot see that reversible error was committed in the rejection of the question which is the subject of the eleventh assignment.    The fact that the respondent had not obtained itemized accounts of these expenditures, unaccompanied by any explanation of the fact, was in the case for the purposes of such legitimate argument as it would tend to support.

In overruling the fifteenth assignment, we are not to be understood as holding that the influencing or attempting to influence voters by the gift of liquors or cigars is any less illegal than the attempt to influence them by the gift of money or other valuable thing.    Under the testimony

of the respondent, and the court's finding of fact based thereon, the item, "Markle's Drug Store for one box of cigars $3.00," was not an election expense within the meaning of the act, and need not have been included in his account. He was not estopped, by the fact that he included it in his account, from showing that the use of the cigars was but the common courtesy which men extend to friends, without any thought on his part or their part that the latter were to be influenced in their votes thereby. See Kinney's Election Expenses, 39 Pa. Superior Ct. 195. This assignment is overruled.

We cannot say that the findings embraced in the thirteenth and fourteenth assignments are not in accordance with the evidence presented. The fundamental error is that offers of relevant and material evidence were excluded.

The judgment is reversed at the costs of the appellee, and the record is remitted to the court below for further hearing, proceeding and decision according to law.