## Kaplan v. Allegheny County Commissioners

*Paul H. Titus,* for plaintiff.
*Henry W. Ewalt,* for defendant.

NARICK, *A.J.,* January 23, 1986 — In this mandamus action, plaintiff, Judge Lawrence W. Kaplan, seeks to compel defendants[1] to refrain from imposing the Allegheny County Commissioners' compulsory retirement policy requiring all county employees, including Judge Kaplan's tipstaff, Austin F. Lacy to retire upon reaching the age of 70. At the center of this case is a dispute between the commissioners in carrying out their legislative and executive responsibilities, and a judge's judicial responsibilities, including the right to supervise, discharge and hire court-appointed employees.

## ISSUES

The parties have stipulated to the facts and have agreed to submit the following issues herein as a case stated:

(1) whether original jurisdiction rests with the Commonwealth Court;

(2) whether this case should be referred to an out-of-county judge if it is determined that there is concurrent jurisdiction in Commonwealth Court and the court of common pleas; and

(3) plaintiff's motion for peremptory judgment.

---

1. Defendants are as follows: Tom Foerster, Peter Flaherty, and Barbara Hafer, Allegheny County Commissioners, Michael J. O'Malley, President Judge of the Allegheny County Common Pleas Court, and Frank J. Lucchino, controller of Allegheny County, individually and as members of the salary board of Allegheny County.

## PREFATORY STATEMENT

At the outset we note that court personnel of the Allegheny County Common Pleas Court, including Lacy, are county employees. Further, we find the commissioners clearly have the right to provide a retirement system for all county employees. The commissioners have the right to impose a reasonable, fair, uniform, mandatory retirement age. Such mandatory retirement ages have been upheld by the courts. *Delvitto v. Shope,* 17 Pa. Commw. 436, 333 A.2d 204 (1975); *McIlwaine v. Pa. State Police,* 6 Pa. Commw. 505, 296 A.2d 630 (1972), affirmed 454 Pa. 129, 309 A.2d 801 (1973), appeal dismissed 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974). In *Soltis Appeal,* 390 Pa. 416, 135 A.2d 744 (1957), a unanimous Supreme Court upheld an ordinance of the city of Duquesne in Allegheny County providing for mandatory retirement of city employees at age 70. The conflict, however, between such a mandatory retirement age and the power of the judges to hire, fire, discipline and set the working conditions for the court-appointed employees is the basic issue before us. We are unaware that any of our appellate courts have previously ruled on this conflict. Thus, this is an issue of first impression.

We limit our decision only to the application of the mandatory retirement policy to and as it affects a member of Judge Kaplan's personal staff. We make no decision herein whether the application of the mandatory retirement policy to court-appointed employees other than a judge's personal staff (secretary, tipstaff, law clerk) would be a violation of the inherent powers of the judiciary and the separation of powers doctrine of the Pennsylvania Constitution.

We find for the reasons set forth below that the application of the mandatory retirement age to

Lacy, a full-time court employee, concerns the hiring, discharge, supervision, and regulation of him. Therefore, to apply the mandatory retirement age promulgated by the commissioners to Lacy over the opposition of Judge Kaplan is a violation of the separation of powers doctrine of the Pennsylvania Constitution and statutory law.

## FACTS

The stipulated facts are as follows: Lacy has been a tipstaff for Judge Kaplan since June 30, 1978. Lacy, a 25-year county employee, has been employed as a tipstaff in several offices since March 31, 1961, and at all times since then has received compensation from the county treasury and has been covered by the county pension system. The commissioners on July 11, 1985, in the exercise of their legislative responsibilities, approved the recommendation of the county salary board's mandatory retirement policy, which provided that ". . .all county employees shall be required to retire at age 70, effective July 22, 1985. . . ." The policy provides for exceptions, permitting certain employees to gain additional years for vesting purposes.

Lacy turned 71 on July 22, 1985, the effective date of the mandatory retirement policy. Judge Kaplan desires to retain Lacy as his tipstaff and has requested that the mandatory retirement policy not apply to Lacy. The commissioners and the salary board directed that the policy be applied to Lacy since he is a county employee and accordingly they have removed him from the payroll of Allegheny County. It is undisputed that Lacy now as in the past is a loyal, diligent and competent member of Judge Kaplan's staff.

On April 12, 1985, President Judge O'Malley entered an order which stated that all court employees would be subject to the mandatory retirement policy. On May 2, 1985, the board of judges voted 13-3 that Judge O'Malley's order of April 12 be amended so as to exclude the personal staffs of the judges from the mandatory retirement policy. Thereafter the president judge wrote to each judge and asked them to indicate their position with respect to whether the personal staffs should be excluded from the mandatory retirement order. The written responses showed 15 judges in opposition to excluding personal staffs, and 15 judges approving excluding personal staffs. Neither a majority of the judges in the Allegheny County Common Pleas Court, nor a majority of the judges voting, indicated support for excluding or including personal staffs from the mandatory retirement policy. Based thereon, President Judge O'Malley decided not to amend his original order of April 12, 1985.

At this point we address the revelance, if any, of the above meetings and voting by the judges to the issue before this court. From our review of the basic issue herein, we find that the voting by judges did not rise up to or constitute a judicial resolution of the issue before this court. The voting was nothing more than an expression, and not a clear or conclusive one at that, for or against the mandatory retirement policy. Accordingly, the voting of the judges and the orders of Judge O'Malley are neither supportive of or against the said policy. Therefore, it is not binding or controlling on this court in making its judicial decision herein.

## JURISDICTION

For the reasons set forth herein we dismiss the defendants' preliminary objection claiming that the exclusive original jurisdiction was in the Common-

wealth Court. The defendants rely on section 761 of the Judicial Code, act of July 9, 1976, P.L. 586, as amended, 42 Pa.C.S. §761(a)(1) and (a)(2):

"(a) General rule. The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

"(1) *Against* the commonwealth government, including any officer thereof, acting in his official capacity, . . . .

. . .

"(2) *By the commonwealth* government, including any officer thereof, acting in his official capacity,

. . . ." (emphasis added).

Plaintiff, on the other hand, contends that under section 761(b), which reads:

"(b) Concurrent and exclusive jurisdiction. The jurisdiction of the Commonwealth Court under subsection (a) shall be exclusive . . . except *with respect to actions or proceedings by the commonwealth government, including any officer thereof,* acting in his official capacity, *where the jurisdiction of the court shall be concurrent with the several courts of common pleas.*" (emphasis added).

When reading (a)(2) and (b) of the above sections, it is clear that the actions brought by the commonwealth or its officers may be brought in either the Commonwealth Court or the court of common pleas. Based on the clear and expressed language of the above section (b), we are satisfied, regardless of the defendant named, that this court has concurrent jurisdiction with the Commonwealth Court. As stated by the court in *Konhaus v. Lutton,* 21 Pa. Commw. 181, 344 A.2d 763 (1975):

"Within the framework of our *original* jurisdiction, it is narrowly circumscribed to encompass only civil actions or proceedings by or against the com-

monwealth or any officer thereof 'acting in his official capacity.' It is *exclusive* as to actions against the commonwealth and *concurrent with the several courts of common pleas in actions or proceedings by the commonwealth.*" (emphasis added).

Since defendant relies on original jurisdiction resting with the Commonwealth Court based solely on President Judge O'Malley being a named defendant as a member of the salary board (section 761[a][1]), we believe further comment is warranted. Defendants assert Judge O'Malley is being sued in his official capacity as an officer of the commonwealth; therefore original jurisdiction is only in the Commonwealth Court, not only relating to Judge O'Malley but also as to all defendants, including the commissioners and the salary board, who admittedly are not the government of the commonwealth or officers thereof as defined in section 102 of the Judicial Code.[2] See *Nagle v. Pa. Insurance Dept.*, 46 Pa. Commw. 621, 406 A.2d 1229 (1979). Although we agree that Judges O'Malley and Kaplan are officers of the commonwealth as set forth in section 102, we do not agree that original jurisdiction is only in Commonwealth Court based on Judge O'Malley being a named defendant, as he is being sued as a member of the salary board. For the above reasons, original jurisdiction is not in the Commonwealth Court for any of the defendants. See *Beckert v. War-*

---

2. Section 102: "The government of the commonwealth, including the courts and other officers or agencies of the unified judicial system, the General Assembly and its officers and agencies, the governor, and the department, boards, commissions, authorities and officers and agencies of the commonwealth, *but the term does not include any political subdivision, municipal or other local authority, or any officer or agency of any such political subdivision or local authority.*" (emphasis added).

*ren,* 497 Pa. Commw. 137, 439 A.2d 638 (1981), wherein plaintiff was the president judge and the same president judge was a named defendant as a member of the salary board in an action brought originally in the common pleas court. Jurisdiction was not raised as an issue.

## SALARY BOARD

For jurisdictional purposes we also consider the role of the county salary board and whether it and its members including Judge O'Malley are indispensable parties. There can be no dispute under the county code that only the commissioners and not the board are empowered with the legislative authority to appropriate funds, levy taxes (County Code, 16 P.S. §202(b) and 203) and adopt policies affecting county employees. As stated by the court in *Franklin County Prison Board v. PLRB,* 491 Pa. 50, 61, 417 A.2d 1138 at 1143 (1980):

"Moreover, a member of the executive branch of local government — either the county controller or the county treasurer where there is no controller — sits on the salary boards, 16 P.S. §1622, further discrediting the notion that the salary boards are legislative bodies. The salary boards perform administrative functions *only* in 'fixing' salaries and compensation." (emphasis in original).

Further, we find only the commissioners in the exercise of their legislative and executive responsibilities are empowered to adopt a mandatory retirement policy for county employees. On the other hand, we find that the actions of the salary board are purely administrative and not legislative. The board is created by statute, 16 P.S. §1622, and is made up of three individual members of the commissioners and the county controller. The chairman of the

commissioners is also the chairman of the board.

"The board, subject to limitations imposed by law, shall fix the compensation of all . . . *court criers, tipstaves and other court employees, and of all officers, clerks, stenographers and employees appointed by the judges of any court and who are paid from the county treasury.*" 16 P.S. § 1623 (emphasis added). It is evident the board has no direct control over nonfinancial matters; instead the adoption of retirement policy is vested exclusively with the commissioners. Further, 16 P.S. § 1625, which provides for the participation of the county judiciary in matters concerning its appointive personnel, states:

"(a) Except as herein otherwise provided, whenever the board shall consider the number or salaries of the deputies or other employees of any county officer or agency, such officer or the executive head of such agency shall sit as a member of the board, as long as any matter affecting his office or agency is under consideration and no longer.

"(b) Whenever the board shall consider the number or salaries of the court criers or tipstaves or other court employes, *the president judge of the court shall sit as a member of the board, as long as any matter affecting the court criers, tipstaves or employes of his court is under consideration and no longer.*"

The actions of a salary board relating to compensation under the above statute was held by the Supreme Court in *Beckett,* supra, to be administrative rather than legislative. The court stated at 650, footnote 9:

"As we stated supra, this court held in *Franklin County Prison Bd. v. Pennsylvania Labor Relations Bd.,* (491 Pa. 50, 61, 417 A.2d 1138 (1980) ) that a salary board is not a legislative body and does not have legislative authority. The principle applies

with equal force to the power of an executive body, such as a salary board, to bind a legislative body, such as the county commissioners. See e.g. *Mitchell v. Chester Housing Authority,* 389 Pa. 314, 132 A.2d 873 (1957)."

Further, the court stated at 647:

"The salary board must then be viewed as exercising executive judgment in fixing the number and compensation of employees, thus implementing the fiscal determinations of the county commissioners."

It is evident from the foregoing that when a member of the judiciary sits on the board, he is limited to performing an administrative function in fixing salaries and compensation of court employees. We find, therefore, as relates to the retirement policy, that Judge O'Malley, when sitting and participating as a board member, was acting in an administrative capacity and not in a legislative capacity. The board merely was responsible for implementing the commissioners' retirement policy. Under the circumstances of this case and the role of the board as an agent merely implementing the commissioners' retirement policy, Judge O'Malley and other board members were not acting as officers of the commonwealth in legislating but rather as ". . . officers or agencies of any political subdivision . . ." as defined in section 102, supra.

For all of the above reasons, we are satisfied that Judge Kaplan, suing in his official judicial capacity, is an officer of the commonwealth (section 102) and falls squarely within the authority of section 761(b) of the Judicial Code providing this court concurrent jurisdiction with the Commonwealth Court. Accordingly, Judge Kaplan at his election had the option of initiating this action in this court or the Commonwealth Court.

## OUT-OF-COUNTY JUDGE

Defendants urge that if this court retains jurisdiction, this case should be transferred to an out-of-county judge. In support thereof, defendants assert that all judges of Allegheny County would have an interest in any decision involving the judge's personal staff. Further, they suggest it would be highly improper for this county's judges to try this case because of the alleged appearance of impropriety. Defendants also assert that the administration of justice should be beyond the appearance of unfairness, implying thereby that it is especially important for this court to maintain an appearance of a disinterested and impartial status, particularly where, as here, the legislative body (commissioners) may be perceived at an unfair disadvantage because it must argue its defense in the judiciary's territory. Defendants cite no statute nor allege that this judge or any judge of our county would be prejudiced, biased, unfair, or would not be impartial in deciding the case. Further, defendants sought to produce no evidence which would have a tendency to show bias, prejudice or unfairness of this judge or any judge in our county.

For the following reasons we reject defendants' request that this case be assigned to an out-of-county judge. This is not a case wherein an action was brought by a law judge against his president judge as in *Ellenbogen v. Larsen,* 16 Pa. Commw. 353, 328 A.2d 587 (1974). In that case an out-of-county judge was suggested under a specific statute because it involved the rights of a judge as opposed to the prerogatives of the president judge. That is not the question in this case because the decision attacked here relates to commissioners imposing a retirement age on a judge's court-appointed personal staff. The statute involved in that case, 17 P.S.

§588, April 1856, provided that whenever the president judge was a party to a suit in any court over which he presided, the president judge nearest to the place of trial should be appointed to try the case. That 1856 statute was repealed by the Judiciary Act Repealer Act, 42 P.S. §20002(a) [325] and has not been replaced. That is the only provision of the code of Judicial Conduct. We are not aware of any provisions in that code which would require the court to recuse itself and seek the appointment of an out-of-county judge.

It cannot be questioned that all judges, whether in Allegheny County, or judges throughout the commonwealth, have an interest in the outcome of this case. Although this dispute originates in Allegheny County, it represents a deadlock between the judicial and legislative branches of government in the exercise of their respective powers. Such a deadlock calls into question the relationship between those branches and its resolution is crucial to both the judicial system and the county government throughout the commonwealth.

The only question open to us is whether defendants have presented a case which would render this judge or any other judge in our county unable to sit in the matter pending before him. It is for the court to determine the question in the first instance, and ordinarily our disposition of it will not be disturbed unless there is an abuse of discretion. In considering the serious request which was not made lightly, we are guided by the rationale of our Superior Court in *Crawford's Estate*, 307 Pa. 102, 108 (1931), wherein the court stated:

"Due consideration should be given by him [judge] to the fact that the administration of justice should be beyond the appearance of unfairness. But, while the mediation of courts is based upon the

principle of judicial impartiality, disinterestedness, and fairness pervading the whole system of judicature, so that courts may as near as possible be above suspicion, there is, on the other side, an important issue at stake; that is, that causes may not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the judge in the trial of a cause. It is of great importance to the administration of justice that such should not occur. If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final unless there is an abuse of discretion. This must be so for the security of the bench and the successful administration of justice. Otherwise, unfounded and ofttimes malicious charges made during the trial by bold and unscrupulous advocates might be fatal to a cause, or litigation might be unfairly and improperly held up awaiting the decision of such a question or the assignment of another judge to try the case. If lightly countenanced, such practice might be resorted to, thereby tending to discredit the judicial system. The conscience of the judge alone is brought in question; he should, as far as possible, avoid any feeling of unfairness or hostility to the litigants in a case."

Each commissioned trial judge in the commonwealth must not only be learned in the law, but also must possess all of the qualifications required by the Constitution and the laws of the commonwealth. All have the same powers, authority, jurisdiction and restrictions. In our view to call in an out-of-county judge would be denying the judges of Allegheny County the same powers and jurisdiction as other judges of courts of record of the commonwealth and would fly in the face of the Constitution that all judges shall have the same powers and jurisdiction.

See *Umbel's Election,* 43 Pa. Super. 598, 609 (1910).

The citizens in the first instance when electing a judge charge him/her with grave responsibilities and understanding in performing his/her duties. Passing through our judicial system the trial judge must initially assume full responsibility in determining matters based on evidence submitted and the law, and leave to the appellate courts the duty of correcting such errors of procedure and law as may appear in the record. This procedural jurisprudence not only speeds the processing of cases but also leads to their early disposition. It is in vain to string out this matter. A judge must decide cases based on the law and facts before him, regardless of the parties involved and complex issues presented. We proceed on this basis.

For the foregoing reasons and since defendants have produced no evidence directly or indirectly which has a tendency to show bias, prejudice or unfairness of this judge, we deny the request to transfer this case to an out-of-county judge. We will now proceed to render a decision on the motion for peremptory judgment.

## MOTION FOR PEREMPTORY JUDGMENT

In this mandamus action, Judge Kaplan seeks to compel defendants to refrain from imposing the commissioners' mandatory retirement upon Lacy, a member of his personal staff.

In support of his action, Judge Kaplan relies not only on statutory authority (42 Pa.C.S. §2301), but also on the inherent power of the judiciary to determine its personnel to carry out its mandate and responsibility of judicial administration.

As stated in *Township of Perkiomen v. Mest et al.;* 92 Pa. Commw. 307, 499 A.2d 706, 708 (1985):

"Mandamus is an extraordinary remedy which will only issue to compel the performance of a ministerial act or a mandatory duty where petitioner has a clear legal right, the respondent has a corresponding duty and there is no other appropriate and adequate remedy. *Rizzo v. Schmanek,* 63 Pa. Commw. 547, 439 A.2d 1296 (1981). The decision whether to issue an order in mandamus is within the discretion of the trial court and this court's scope of review is limited to a determination of whether the trial court abused its discretion or committed an error of law."

Moreover, rule 1098 of the Pennsylvania Rules of Civil Procedure directs that peremptory judgment may be entered only where the right of the plaintiff is clear. *Shroyer v. Thomas,* 368 Pa. 70, 81 A.2d 435 (1951). The motion for peremptory judgment is the equivalent of an application for a preliminary injunction. See Goodrich-Amram 2d § 1098.2. In this case there are no substantial issues of fact.

Before discussing the issue of whether it is appropriate to invoke the inherent powers of the judiciary, we examine the relevant statutory provisions. As stated by the court in *Beckert,* supra, at 644:

"A striking feature of this commonwealth's judicial system at the county level is the court-county cooperation mandated by statute. A significant proportion of the personnel involved in the operation of a county judicial system is neither appointed nor supervised by the judges of a court of common pleas. These employees, in the language of the Judicial Code, are 'county staff,' that is [s]ystem and related personnel elected by the electorate of a county or subject to appointment and removal by officers, other than judicial officers, so elected.' 42 Pa.C.S. § 102. County staff includes, inter alia, the coroner, prothonotary, clerk of the court, clerk of the orphans' court, sheriff, district attorney and jury com-

missioners, and their respective staffs. 16 P.S. §401 (Supp., 1981). The provision of the Judicial Code which gives this court 'general supervisory and administrative authority over the personnel of the [unified judicial] system' specifically excludes 'county staff,' . . . ."

Similarly, 42 Pa.C.S. §2301 provides:

"(a) General rule.—Subject to any inconsistent general rules or statutory provisions each:

"(1) Judge and district justice may appoint and fix the duties of necessary personal staff.

"(2) Court may appoint and fix the compensation of personal staff.

"(3) Other agency or unit of the unified judicial system may appoint and fix the compensation and duties of necessary central staff and personal staff.

. . .

"(c) County staff unaffected.—The provisions of subsection (a) are intended solely to codify and consolidate former statutory provisions on the same subject and nothing in such subsection shall be construed to limit, modify or deny the existing powers or prerogatives of county staff or other officers, other than judges, elected by the electorate of a county, to appoint and to fix the reasonable compensation of such classes of personnel as such county officers have heretofore been authorized to do by law."

The order entered by the president judge adopting a retirement policy in conformity with the commissioners' directive cannot effectively supervene the intent of 42 Pa.C.S. §2301 "Allegheny County Appointments." That statute establishes the president judge's authority to appoint a judge's personal staff as deriving from" . . . designation of an appointee by the affected judge." (Judge Kaplan). Also see,

*Sweet et al. v. Pa.L.R.B.*, 457 Pa. 456, 322 A.2d 362 (1974).

It is the law, both by statutory provision and case law, that the right to hire, discharge, and supervise court employees is in the judges. The act of June 29, 1976, P.L. 460, 16 P.S. §1620 read as follows:

"The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employees who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, that with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employees paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employees. *The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employees as may be vested in the judges or other county officers.*" (emphasis added).

We further find that application of the commissioners' mandatory retirement age to Judge Kaplan's tipstaff over the opposition of Judge Kaplan is a violation of the separation of powers doctrine of the Pennsylvania Constitution. The court in *Beckert*, supra, discussed the relevant constitutional background of the judiciary's inherent power at 642:

"The notion of the inherent power of the judiciary is implicit in the doctrine of separation of powers. We discussed this fundamental doctrine recently in

*Zemprelli v. Daniels,* 496 Pa. 247, 436 A.2d 1165, at 1168 (1981), quoting *Sweeney v. Tucker,* 473 Pa. 493, 507-508, 375 A.2d 698, 705 (1977): 'A basic precept of our form of government is that the executive, legislature and the judiciary are independent, co-equal branches of government.' *Commonwealth ex rel. Carroll v. Tate,* 422 Pa. 45, 274 A.2d 193 (1971) (plurality opinion) (citation omitted). The dividing lines among the three branches "are sometimes indistinct and are probably incapable of any precise definition." Under the principle of separation of the powers of government, however, no branch should exercise the functions exclusively committed to another branch. (citations omitted).

The allocation of these governmental powers to three distinct branches averts the danger inherent in the concentration of absolute power in a single body:

"The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." The Federalist No. 47 (J. Madison)

It should be evident from the above discussion that the actual exercise of inherent power must be viewed as exceptional, that is, reserved for defensive use in direct conflict or crisis. There must be a genuine threat to the administation of justice and not merely a theoretical encroachment by the legislative body. See *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 438, 388 A.2d 730, 735 (1978); *Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Bd.,* 479 Pa. 440, 447-448, 388 A.2d 736, 739-740 (1978).

The recent statement of our Supreme Court in *Lehigh County v. Labor Relations Board et al.,* 507

Pa. 270, 489 A.2d 1325 (1985) and *In the Matter of the Appointment of T. P. Antolik,* no. 3185 C.D. 1984, decided Nov. 29, 1985, are relevant and merit quotation: "The power to appoint necessary personnel is inherent in the judicial power. *Sweet v. Pa. Labor Relations Board, Sweet I,* 457 Pa. 456, 322 A.2d 362 (1974). See also, 42 Pa.C.S. §2301. The authority to supervise and to discharge court-appointed employees is not only a necessary corollary to this appointment power, but also is essential to the maintenance of an independent judiciary. See *Commonwealth ex rel Bradley v. Pa. Labor Relations Board,* 479 Pa. 440, 388 A.2d 736 (1978); *Ellenbogen v. County of Allegheny,* 479 Pa. 429, 388 A.2d 730 (1978). 'Since the court has the inherent right to hire, discharge and supervise an employer-employee relationship exists by definition between the judges and their appointees.' *Commonwealth ex rel Bradley v. Pa. Labor Relations Board,* supra; *Sweet I,* supra; see, *Costigan v. Philadelphia Finance Department Employees Local 696 AFSCME,* 462 Pa. 425, 341 A.2d 456 (1975). *The fact that those employees are paid by the county does not alter the court's employer status. Sweet I,* supra." *Lehigh* at 1327. (emphasis added).

In the *Antolik* case, supra, the director of personnel of Erie County refused to reclassify an employee of the probation office of the Erie County Common Pleas Court because the appointment of the individual would violate certain provisions of the administrative code of Erie County dealing with nepotism. The Erie County Common Pleas Court then issued an order appointing Mr. Antolik to the post of director of the probation office. Erie sought review of this order in the Commonwealth Court. Erie argued that it would be necessary to find actual impairment or a genuine threat to the independence of the judiciary

or to the administration of justice in order to invalidate the provisions of the administrative code which had barred the appointment of Mr. Antolik. The Commonwealth Court, in response to this argument, stated:

"No such limiting test is warranted or applicable where the hiring, firing and supervision of court appointed personnel is concerned, and any law which encroaches upon or affects this power must be struck down unless there exists independent constitutional authorization." (slip opinion, p. 5)

The court further stated, at 5-6:

"The collective bargaining and judicial finding cases cited by appellants prove the very point they seek to refute, namely that no limiting test is applicable in the court personnel area where hiring, firing and supervision are directly at issue. *Ellenbogen* specifically restricted the scope of collective bargaining to exclude matters pertaining to the hiring, firing and supervision of court employees." Id. at 437, 388 A.2d at 734.

The *Eshelman* case cites the test applicable to laws affecting hiring, firing and supervisory power over court employees:

"The courts of this commonwealth under our constitution have certain inherent rights and powers to do all such things as are reasonably necessary for the administration of justice. . . . Because the power to select judicial assistants is an inherent corollary of the judicial power itself, the power to supervise or discharge such personnel flows essentially from the same source . . . That power may not . . . be policed, encroached upon or diminished by another branch of government." 62 Pa. Commw. 413-415, 436 A.2d 712 (citations omitted).

The majority opinion by Chief Justice Nix capsulizes its holding in *Ellenbogen v. County of Allegheny,* supra, where:

". . . we held that so long as judges retain their authority to select, discharge and supervise court personnel the independence of the judiciary is unimpaired, we upheld the applicability of the Public Employee Relations Act to courts of common pleas and their appointees, we further noted that the judiciary has the inherent power to prevent any actual impairment of its independence created by the collective bargaining process. *Com. ex rel Bradley v. Pa. Labor Relations Board,* supra, 479 Pa. at 447, 388 A.2d at 739-40; see also, *Ellenbogen v. County of Allegheny,* supra. Thus, under our decisions, county commissioners are not prohibited from negotiating 'wages, hours and other terms and conditions of employment' provided such terms do not impinge upon judicial control of hiring, discharge and supervision in some concrete manner." (footnote omitted).

Based on the above persuasive decisions, it is clear that a judge has the right to have the persons of his/her choice on his/her staff. The talent, competency, work habits, experience and personalities of these court employees have a major impact on the court and on its ability to do its job in a proper and efficient manner. The time needed to select and train new employees is an additional burden on the court.

The imposition of the mandatory retirement age on Lacy means that he cannot work, although Judge Kaplan says that his work is excellent and in no way affected by his age. It also means that the judge cannot hire anyone in the future regardless of his needs or the talent of the person involved, if that person is over 70 years old. It also means that the

judge cannot have the employees on his personal staff that he wants holding those positions.

We hold that for another agency of government (commissioners) to impose a mandatory retirement age upon a judge's court-appointed employee is to give that agency of government the right to have influence over the hiring and firing of court employees. This is not constitutionally permissable for the reasons set forth in cases cited herein. The Supreme Court of Pennsylvania said in *Beckert,* supra, at 439 A.2d 649:

". . . county officers cannot terminate court employees by budget actions or otherwise, . . . . We agree that the judiciary retains the exclusive right to hire, discharge and supervise 'personal' and 'administrative' employees." (emphasis added). See 42 Pa.C.S. §2301; 16 P.S. §1620 (Supp., 1981).

We believe that this case is a situation where the "otherwise" in *Becket,* supra, applies.

As the *Antolik* opinion makes clear, the Constitution of Pennsylvania protects the inherent power of the judiciary to do all things which are necessary and reasonable for the administration of justice. Central to this power of the court is the power of the court to control its own employees. No case could be clearer than the present case. The personal staff of judges are uniquely under the control of each judge. In the present case, Lacy has been hired by Judge Kaplan to serve as his tipstaff. Under the constitution, Judge Kaplan and Judge Kaplan alone has the power to hire or fire Mr. Lacy. The county's rule requiring retirement at age 70 can simply have no application to Mr. Lacy's employment. Accordingly, as this most recent opinion of the Commonwealth Court makes abundantly clear, peremptory judgment must be granted against the commissioners

and other defendants to refrain from applying the retirement age to Judge Kaplan's tipstaff.

## CONCLUSION

Because the mandatory retirement policy of Allegheny County is encroaching upon the right of a judge and judiciary to hire, fire and supervise court employees, the said policy must be struck down insofar as it relates to Judge Kaplan's personal staff (Lacy) and others similarly situated. Based on the facts and law, we find that Judge Kaplan has met the requirements for a peremptory judgment. Plaintiff has demonstrated a clear legal right and a corresponding duty in the commissioners and the other defendants implementing the mandatory retirement policy. We also find that the motion for peremptory judgment is the equivalent to an application for a preliminary injunction requiring, inter alia, immediate relief. In this case to prevent the interruption of the functioning of Judge Kaplan's duties as a judge requires that his tipstaff shall remain in the employment of the county.

It is our finding that Judge Kaplan has the exclusive right to hire, discharge and otherwise administer the employees he appoints, and his right may not be "encroached upon," "diminished," "policed," or "affected." That language creates a clear right and the actions of the commissioners and the other defendants are a clear violation of that right.

Further, the need for relief is obviously immediate since the retirement policy has been implemented and to allow it to continue in the future would result in irreparable harm, since Judge Kaplan would continue to be without the services of his appointed employee. It matters not whether the loss of the use of Lacy last one week, six months, or one year; it

causes irreparable injury to Judge Kaplan and the court when the action of the legislative body (commissioners) is permitted to interfere with the exercise of the court's function. The proper remedy is mandamus and we so find.

An appropriate order follows.

## . ORDER

And now, this January 23, 1986, after hearing excellent arguments and briefs, and for the reasons set forth in the opinion herein, it is hereby ordered, adjudged and decreed that peremptory judgment be entered in favor of Judge Kaplan and against the commissioners of Allegheny County and defendants implementing the county's mandatory retirement policy; that the commissioners and other defendants are restrained from interfering in any way with Judge Kaplan's employment of or payment of wages for Lacy; that the commissioners and defendants make Lacy whole for any loss of pay he has suffered since July 22, 1985, equal to the amount of money which he normally would have earned from the above date if not terminated by the said retirement policy, and reinstate him immediately to his former position as tipstaff, without prejudice to any rights, benefits and privileges.